AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

DISTRICT OF __MASSACHUSETTS__

UNITED STATES OF AMERICA

V.

SAMY GAMAL MOHAMED and LORRAINE J. MOTT

**CRIMINAL COMPLAINT**

CASE NUMBER: mJ # 04-865-MBB

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __Aug. 30, 1996 to July 19, 2004__ in __Suffolk and Essex__ counties in the District of __Massachusetts__ defendant(s) did, (Track Statutory Language of Offense)

conspire to commit an offense against the United States, to wit; to enter into a marriage for the purpose of evading any purpose of the immigration laws, in violation of Title 8, United States Code, section 1325(c); and did encourage or induce any alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry or residence would be in violation of law; and did, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly falsify, conceal, or cover up, by any trick, scheme or device, a material fact

in violation of Title __18__ United States Code, Section(s) __371, 1001; 8 U.S.C. section 1324(a)(1)__.

I further state that I am a(n) __Senior Special Agent__ Immigration and Customs Enforcement and that this complaint is based on the following facts:

Official Title

See attached affidavit.

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Signature of Complainant
GREGORY C. NEVANO

Sworn to before me and subscribed in my presence,

07-19-2004 @ 5:15PM          at          Boston, Massachusetts
Date                                      City and State

MARIANNE B. BOWLER
Chief United States Magistrate Judge
Name & Title of Judicial Officer                Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT OF SENIOR SPECIAL AGENT GREGORY C. NEVANO

I, Gregory C. Nevano, having been duly sworn, do hereby dispose and state as follows:

1. I am a Senior Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), formerly the Immigration and Naturalization Service ("INS"). I have been employed with ICE since 1991, and have conducted several criminal investigations involving immigration fraud. I am presently assigned to the Joint Terrorism Task Force ("JTTF") within the ICE Boston, Massachusetts field office.

2. I make this affidavit in support of a criminal complaint against Samy Gamal MOHAMED, a.k.a. Samy MOHAMED and Lorraine J. MOTT a.k.a Lorraine MOHAMED, charging them with violations of: Title 18, United States Code, Section 371, that is, conspiracy to knowingly enter into a marriage for the purpose of evading any provision of the immigration law in violation of Title 8 United States Code Section 1325(c); Title 8, United States Code, Section 1324(a)(1)(A)(iv), that is, encouraging or inducing one or more aliens to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; and Title 18, United States Code, Section 1001(a)(1), that is, falsifying, concealing, or covering up by any trick, scheme, or device a material fact in a statement made to an agency of the Executive Branch of the United States Government.

3. The information set forth in this affidavit is based on my own investigation, and my review of ICE records, as well as information provided by other law enforcement officials. This affidavit does not contain every fact that I have learned during the course of this investigation, but instead has included only those facts that I believe establish the requisite probable cause.

1

4. Samy MOHAMED was born on July 28, 1962 in Ismalia, Egypt. He entered the United States on or about July 14, 1996 as a nonimmigrant visitor for pleasure. He was authorized to remain in the United States for a temporary period until not later than January 1, 1997. On or about August 30, 1996, less than two months after arriving in the United States, MOHAMED claims he married Lorraine J. MOTT, a United States citizen born in New Bedford, Massachusetts on December 15, 1939. MOTT, therefore, is some twenty-three years older than MOHAMED.

5. On or about September 27, 1996, MOTT filed an I-130 Petition for Alien Relative with INS on behalf of MOHAMED, as well as an I-485 Application to Register Permanent Residence or Adjust Status form which she filed jointly with MOHAMED.

6. On or about February 2, 1998, INS approved both of the aforementioned applications, and MOHAMED was granted Conditional Resident Alien Status (CR-6), valid until February 1, 2000. On or about January 13, 2000, MOTT and MOHAMED filed jointly with INS an I-751 Petition to Remove the Conditions on Residence.

7. Subsequent to MOHAMED's receipt of Conditional Resident Alien Status, the INS Boston Office of Investigations received three reports from private citizens who indicated that MOHAMED was involved in a fraudulent marriage to MOTT for the sole purpose of obtaining an immigration benefit. Two of the three private citizens indicated that MOHAMED paid MOTT $1,500.00 for the marriage in three installments of $500.00 each. In one of the private citizens' reports, the writer stated that MOHAMED was also in the process of setting up other false marriages, including one for his brother, Alaa MOHAMED, who was then living in Egypt.

8. Based on the aforementioned marriage fraud leads, INS Special Agent Dana

FIANDACA began a marriage fraud investigation concerning MOHAMED and MOTT. Based on the I-751 application that MOTT and MOHAMED filed, they were purportedly living together at 365 Washington Avenue, Chelsea, Massachusetts. During his investigation, Special Agent FIANDACA obtained a different address for MOTT, that being 147 Washington Street, Apt. 510, Lynn, Massachusetts. This address was obtained from the Massachusetts Welfare Office. On or about February 28, 2000, Special Agent FIANDACA and Special Agent Randy REEVES went to 147 Washington Street, Apt. 510, Lynn, Massachusetts to interview MOTT. MOTT informed the agents that she had been separated from MOHAMED for over one year and that she did not know his current whereabouts or how to contact him. MOTT told the agents that she and MOHAMED agreed to initiate divorce proceedings. MOTT agreed to complete a withdrawal of her I-751 application that she filed jointly with MOHAMED. Based on this withdrawal, INS terminated MOHAMED's status as a Conditional Resident Alien on February 29, 2000.

9. On or about March 2, 2000, Special Agent FIANDACA and a Chelsea, Massachusetts, police officer went to 365 Washington Street, Chelsea, Massachusetts to interview MOHAMED. MOHAMED was living at this address with a female who was later identified as Bouchra GOUMMIH, born in Morocco on January 14, 1972. Special Agent FIANDACA ordered MOHAMED to report to the INS office the next day for processing. On or about March 3, 2000, MOHAMED appeared at the INS office in Boston, Massachusetts. He was processed for removal under Section 237(a)(1)(D) of the Immigration and Nationality Act (INA) and released on his own recognizance pending a hearing before an Immigration Judge.

10. On or about July 19, 2000, MOHAMED appeared for his initial appearance before

the Immigration Court. MOTT accompanied MOHAMED, and MOHAMED told the Immigration Judge that he had resolved his differences with MOTT and that the couple was back together again. The case was continued until December 27, 2000. On or about August 9, 2000, Assistant District Counsel (ADC) Susan J. Hiller referred MOHAMED's case back to the Office of Investigations to determine whether MOHAMED and MOTT were truly living together. On or about October 23, 2000, INS Special Agents George FENNELL and Heath SIMON went to 147 Washington Street, Lynn, Massachusetts to interview MOTT. MOTT told the agents that she had not resided with MOHAMED since prior to the last immigration hearing. MOTT told the agents that MOHAMED provided her with approximately $40.00 to $60.00 now and then to help her with living expenses, but this amount was not sufficient. MOTT broke down and cried, and told the agents that she was close to being evicted from her apartment.

11. On or about May 16, 2001, MOTT and MOHAMED filed a second I-751 application with INS. In this application, MOHAMED indicated that he had a son, Samy Mohamed GAMAL, born on October 13, 2000. The birth certificate for Samy Mohamed GAMAL lists Bouchra GOUMMIH as the mother. On March 25, 2002, an Immigration Judge administratively closed the removal action commenced on March 3, 2000 so that the INS could adjudicate the newly-filed I-751.

12. On or about April 16, 2004, MOHAMED and MOTT appeared at the Citizenship and Immigration Services (CIS) office in Boston, Massachusetts, for their I-751 interview. The interview was assigned to District Adjudication Officer (DAO) Toni SWANSON. DAO SWANSON interviewed both MOHAMED and MOTT separately. During the interviews, several inconsistencies were noted. MOHAMED was interviewed first, and told DAO SWANSON that he resided at

8 Warren Street, Revere, Massachusetts with MOTT since September of 2003. MOTT however, told DAO SWANSON that she was residing at 67 Silsbee Street Apt. 20 in Lynn, Massachusetts. MOHAMED also told DAO SWANSON that he does not own GAMAL TAXI, when in fact the business records submitted to the Commonwealth of Massachusetts indicate that Samy MOHAMED of 8 Warren Street, Revere, Massachusetts is the owner, treasurer, and clerk of GAMAL Taxi. Based on this interview, CIS is prepared to issue a Notice of Intent to deny the second I-751 petition filed by MOHAMED and MOTT.

13. In addition, there is probable cause to believe that MOHAMED and MOTT have attempted to arrange marriages for some of MOHAMED's family members and friends. On or about October 9, 1998, Khrystyna SNEED, born in the United States on December 14, 1980, and living at 11 Grant Street, Lynn, Massachusetts, filed an I-129F Petition for Alien Fiancé on behalf of Alaa GAMAL, born in Ismalia Egypt on August 2, 1964. A review of Alaa MOHAMED's alien file confirms that he is Samy MOHAMED's brother. The alien file contains a letter of support written by Samy MOHAMED in which he swears under the pains and penalties of perjury that Khrystyna SNEED and his brother Alaa were romantically involved and engaged. Additional investigation also indicates that Khrystyna SNEED's grandmother, Dora Taylor, born in the United States on July 8, 1938, filed an I-129F petition, also on October 9, 1998, in behalf of Sameh Abdelsattar METWALY, an Egyptian national born on December 1, 1963. METWALY is believed to be Samy MOHAMED's cousin.

14. On or about July 12, 2004, this affiant and Federal Bureua of Investigation Special Agent Jennifer Cormack interviewed Khrystyna SNEED. SNEED told this affiant that from 1996 until 2003, she lived at 11 Grant Street, Lynn, Massachusetts with her mother, Tanya SNEED. Lorraine MOTT also lived at this address for

approximately one year, and Tanya SNEED and MOTT became friends. On an unknown date in 1998, Lorraine MOTT approached Tanya SNEED to see whether Tanya SNEED would be interested in marrying one of Samy MOHAMED's brothers or cousins who lived in Egypt. In exchange, MOTT told Tanya SNEED that she would be paid $5000.00. Tanya SNEED was not interested in this proposal because she was ill, so she talked to her daughter Khrystyna, and also talked to her mother, Dora TAYLOR, each of whom agreed to go through with the proposal. MOTT told Khrystyna SNEED and Dora TAYLOR some of the steps that she and MOHAMED took to convince INS that they were truly a married couple. SNEED also told this affiant that MOHAMED never lived with MOTT at 11 Grant Street, Lynn, Massachusetts.

15. Plans were formulated to have Khrystyna marry Samy MOHAMED's brother Alaa MOHAMED, and Dora TAYLOR to marry Samy MOHAMED's cousin, Sameh Abdelsattar METWALY. Khrystyna SNEED and Dora TAYLOR met Samy MOHAMED when SNEED was close to graduating high school in 1998. MOHAMED took SNEED and TAYLOR to get their United States passports, and paid for the application fees. SNEED and TAYLOR would need their passports to fly to Egypt to meet Alaa MOHAMED and Sameh Abdelsattar METWALY. MOHAMED then prepared the necessary Immigration forms (which your affiant believes to be the aforementioned I-129F petitions) and told SNEED and TAYLOR to sign them. MOHAMED promised to pay for SNEED and TAYLOR $2,500.00 each once they arrived in Egypt, as well as paying for all their incidental expenses. Once each couple got married, SNEED and TAYLOR would each receive an additional $2,500.00. MOHAMED paid for SNEED's and TAYLOR's tickets and they went to Egypt in the summer of 1998. MOHAMED met them in Egypt and introduced them to his brother and cousin. MOHAMED

compelled SNEED and TAYLOR to take pictures with their prospective husbands at a zoo. MOHAMED told SNEED and TAYLOR that these pictures were required to convince INS that they were truly couples. MOHAMED failed to pay SNEED and TAYLOR the agreed upon amount of $2,500.00 each. Rather, he gave them only $300.00 for two weeks' of necessary expenses. Khrystyna SNEED and Dora TAYLOR attempted to fly home early, but were unable to book flights. MOHAMED refused to let SNEED call home to her mother. Upon returning to the United States, SNEED and TAYLOR never received any additional funds, and therefore did not follow through with getting married.

16. Based on the foregoing, I believe that probable cause exists that Samy Gamal MOHAMED and Lorraine J. MOTT conspired to knowingly enter into a fraudulent marriage, in violation of Title 8, United States Code, Section 1325(c), in order to obtain lawful permanent resident alien status for MOHAMED, all in violation of Title 18, United States Code, section 371; and that they encouraged or induced aliens to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law, in violation of Title 8, United States Code, Section 1325(c); and that on or about April 16, 2004, that they made materially false and fictitious statements to Citizenship and Immigration Services, an agency within the

Department of Homeland Security, an executive department within the Executive Branch of the United States Government, in violation of Title 18, United States Code, section 1001(a)(1).

GREGORY C. NEVANO
Senior Special Agent
Immigration and Customs Enforcement

Subscribed and sworn to before me this 19th day of July 2004.

MARIANNE B. BOWLER
Chief United States Magistrate Judge