UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES** | )<br>)<br>) |
| v. | ) Crim. No. 04-10276-RCL<br>) |
| **SAMY GAMAL MOHAMED** | )<br>)<br>) |

**RENEWED JOINT MOTION FOR A COMBINED RULE 11 AND SENTENCING HEARING AND MEMORANDUM IN SUPPORT**

The defendant, Samy Gamal Mohamed, and the United States renew their joint motion for the Court to: a) schedule a combined Rule 11 and sentencing hearing as soon as possible, and; B) dispense with preparation of a pre-sentence report. The parties state their reasons in the following memorandum.

I.    **REQUEST TO WAIVE PRE-SENTENCE INVESTIGATION AND REPORT**

The parties jointly request, pursuant to Fed. R. Crim. P. 32(b)(1), that the pre-sentence investigations and reports in this matter be waived. The parties suggest that the information in the record before this Court enables it to exercise its sentencing authority meaningfully under 18 U.S.C. § 3553. In support of their joint request, the parties refer the Court to the Bail Report prepared by Pretrial Services at the time of the defendant's first appearance in this matter. Further, the parties hereby provide the Court with the government's offense conduct supporting the two-count Information, to which the defendant is prepared to plead.

Count I charges the defendant with conspiracy to enter into a false marriage to evade the immigration laws, in violation of 18 U.S.C. § 371. Count II charges the defendant with making false statements to an officer of Citizenship and Immigration Services, in violation of 18 U.S.C.

§ 1001(a)(2).

The parties state that the United States Probation Office will not require a Pre-Sentence Report for this case. If the Court accepts the defendant's plea to the Information and sentences him according to the government's recommendation of time served, the defendant, an Egyptian citizen, would likely be released to the custody of the United States Immigration and Customs Enforcement for deportation proceedings.

## II.   BIOGRAPHICAL DATA

According to the Pretrial Services Bail Report, the defendant was born in Ismalia, Egypt on July 28, 1962. His father, Gamal, died in 1969 while serving in the Egyptian military. His mother, Fatma, 64, lives in Egypt, and cares for the defendant's four-year-old son Gamal. The defendant has four siblings, all living in Egypt: Fatiha, 51, a government employee; Mohamed, 47, a doctor; Samia, 45, a high school administrator, and; Alaa, 40, an engineer. He has two cousins who currently live in Massachusetts: Shabaan Metwaly, a naturalized citizen, and Imad Ezzat.

The defendant earned a Bachelor of Arts degree from Zagazig University, in Zagazig, Egypt, in 1989, and a Masters Degree in geology from Cairo University in 1990. He served one year of compulsory military service, and was honorably discharged. He came to the United States as a non-immigrant visitor on or about July 14, 1996, and was granted Conditional Resident Alien Status sometime afterward. At the time of his arrest, he had a pending application for legal status. His passport, issued in Egypt, has been confiscated.

He resides at 8 Warren Street, apartment 2, in Revere, Massachusetts. His roommate Yasser Ali is a permanent legal resident. The defendant pays $550 per month in rent.

He worked as taxi driver for four years before starting his own company, Gamal Taxi, in Roslindale, Massachusetts. He owns a City of Boston "Medallion" to operate the taxi cab service. He has a half-share in a second medallion, which is the subject of a civil dispute between him and his partner. Both medallions are heavily mortgaged. The first is worth approximately $190,000, and the second, in which he has a half-share, is worth approximately $130,000. He owns a one-third share in a garage at 450/452 2nd Street in Fall River, Massachusetts, worth approximately $10,000.

The defendant pays $2,100 per month for the taxi medallion mortgages, and $6,200 per year in taxi motor vehicle insurance. He earned between $3,000 and $4,000 per month. He also sent payments of a few hundred dollars every two or three months to his mother in Egypt to help pay for his son's care.

At time of his arrest, the defendant had $397 cash on hand, and $940 in a Cambridge bank business account. He had about $100 left one week ago. His personal accounts were closed in mid-September. There was $220 remaining in his savings account, and $60 in his checking account. He owns a 1999 Dodge Caravan, worth about $6,000.

The defendant has kidney stones, for which he takes medication prescribed by his brother in Egypt. Otherwise, he reports that he is in good health. He has no history of alcohol or drug use, and no history of mental illness.

The defendant does not possess a firearm or hold a firearm license. He has no criminal record prior to this case.

**III.    GOVERNMENT'S STATEMENT OF RELEVANT FACTS**

1.  On or about August 30, 1996, less than two months after arriving in the United States, Mohamed claimed to have married Mott, a United States citizen born in New Bedford, Massachusetts on December 15, 1939.

2.  On or about September 27, 1996, Mott filed an I-130 Petition for Alien Relative with INS on behalf of Mohamed, as well as an I-485 Application to Register Permanent Residence or Adjust Status form which she filed jointly with Mohamed.

3.  On or about January 13, 2000, Mott and Mohamed filed jointly with INS an I-751 Petition to Remove the Conditions on Mohamed's Residence.

4.  Based on the I-751 application that Mott and Mohamed filed, they were purportedly living together at 365 Washington Avenue, Chelsea, Massachusetts. In fact, at the time, Mott was living at 147 Washington Street, Apt. 510, Lynn, Massachusetts.

5.  On or about February 28, 2000, during an interview at 147 Washington Street, Apt. 510, Lynn, Massachusetts, Mott admitted that she had been separated from Mohamed for over one year and that she did not know his current whereabouts or how to contact him. Thereafter, Mott completed a withdrawal of her I-751 application that she filed jointly with Mohamed.

6.  On or about March 2, 2000, Mohamed was found to be living at 365 Washington Street, Chelsea, with a female who was later identified as Bouchra Goummih, born in Morocco on January 14, 1972.

7. On or about July 19, 2000, Mohamed appeared before the Immigration Court in Boston. Mott accompanied Mohamed, and Mohamed told the Immigration Judge that he had resolved his differences with Mott and that the couple was back together again.

8. On or about October 23, 2000, at 147 Washington Street, Lynn, Massachusetts, Mott acknowledged that she had not resided with Mohamed since prior to the last immigration hearing.

9. On or about May 16, 2001, Mott and Mohamed filed a second I-751 application with the former Immigration and Naturalization Service. In this application, Mohamed indicated that he had a son, Samy Mohamed Gamal, born on October 13, 2000. The birth certificate for Samy Mohamed Gamal lists Bouchra Goummih as the mother.

10. On or about April 16, 2004, Mohamed and Mott appeared at the Citizenship and Immigration Services office in Boston, Massachusetts, for their I-751 interview. During his interview, Mohamed told the interviewing immigration officer that he resided at 8 Warren Street, Revere, Massachusetts with Mott since September of 2003. In a separate interview the same day, Mott told the same immigration officer that she was residing at 67 Silsbee Street, Apartment 20, in Lynn, Massachusetts.

**IV.  GUIDELINE CALCULATIONS**

U.S.S.G. § 2L2.2 is the applicable guideline provision for this case and sets the base offense level at 8.  The government will recommend a two-level reduction under U.S.S.G. § 3E1.1(a) for a timely acceptance of responsibility.  Accordingly, the adjusted offense level is 6.

With no criminal record or criminal history points, the defendant's criminal history category is I.  The guideline sentencing range is 0-6 months (Zone A).  The defendant has been detained for two months in the Plymouth County Correctional Facility, and the government will recommend that the Court sentence the defendant to the time served.   The government will also recommend a $200 mandatory special assessment and an order of deportation by the court at the time of sentencing.

**V.    CONCLUSION**

As part of his plea agreement with the government, the defendant will agree to waive his right to a hearing as to whether he can be deported or removed from the United States.  He will waive his right to apply for relief from deportation or removal from the United States.  He understands that a removal order could permanently ban him from the United States.  He will agree and stipulate to accept a final judicial order of deportation or removal from the United States upon conviction and completion of any period of incarceration;

Further, the defendant states that he is ready and willing to depart from the United States, and that continuing his detention is unnecessary and will not serve the interests of justice.  He asks that the Court grant him a hearing on September 27, 2004, or at the earliest possible date afterward.

WHEREFORE, the parties request that the Court schedule a hearing during which the Court will sentence Mr. Mohamed after accepting his change of plea.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| MICHAEL J. SULLIVAN<br>United States Attorney | SAMY GAMAL MOHAMED<br>By his attorney, |
| /s/   Gregory Moffatt<br>Gregory Moffatt<br>Assistant U.S. Attorney<br>U.S. Attorney's Office<br>One Courthouse Way<br>Boston, MA 02210 | /s/   John H. Cunha Jr<br>John H. Cunha Jr.<br>B.B.O. No. 108580<br>CUNHA & HOLCOMB, P.C.<br>One State Street, Suite 500<br>Boston, MA 02109-3507 |

Dated: September 27, 2004

H:\Word\Crim\Mohamed\Joint motion and memo.wpd